TED L. MABRY AND MARIE E. MABRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mabry v. Commissioner
Docket No. 35769-83.
United States Tax Court
T.C. Memo 1985-328; 1985 Tax Ct. Memo LEXIS 304; 50 T.C.M. (CCH) 336; T.C.M. (RIA) 85328; July 3, 1985. David L. Moore, for the petitioners. Gerald W. Douglas, for the respondent. KORNER
MEMORANDUM OPINION "KORNER, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1978 and 1979 in the respective amounts of $2,932 and $3,572. A single issue is presented for our determination: whether the retirement payments made by the City of Oakland, California, to petitioner Ted L. Mabry in the years 1978 and 1979 were excludable *305 from his gross income under the provisions of section 104(a)(1), [1] or whether they were fully includable under the provisions of section 61(a). The case was submitted to the Court under the provisions of Rule 122 on a set of fully stipulated facts and joint exhibits, which are incorporated herein by this reference and form the basis of our findings of fact herein. Petitioners Ted L. Mabry and Marie E. Mabry, husband and wife, were residents of Medford, Oregon, at the time of filing their petition herein. Their joint income tax returns for the years 1978 and 1979 were duly and timely filed with the Ogden Service Center. Petitioner Ted L. Mabry (hereinafter "petitioner") was employed by the City of Oakland, California, as a fireman, and served on active duty until June 16, 1959. On that date, he suffered a heart attack, which occurred in the actual performance of his duties as a fire fighter. Effective July 1, 1960, petitioner was retired for disability by reason *306 of this heart attack, by action of the Oakland Police and Fire Retirement Board, which found his disability to be service connected. As the result of the above action of the Oakland Police and Fire Retirement Board, petitioner became qualified for and began receiving disability retirement pay in lieu of temporary or permandent worken's compensation. Said retirement allowance, effective July 1, 1960, was computed under the provisions of section 2610(a) of the Charter of the City of Oakland. [2] Pursuant to said provisions, petitioner began receiving a retirement allowance equal to 75 percent of his pay in the year preceding his disability retirement. *307 Petitioner continued receiving the above disability retirement pay through the month of September 1960. On September 27, 1960, petitioner became 55 years old, and at that point had completed 22 years of service as an Oakland fire fighter, including the time during which he received disability retirement pay (computed in accordance with section 2609 of the city Charter). At that time, petitioner became eligible for regular retirement for service. Pursuant to section 2610(a) of the Charter of the City of Oakland, the City then began computing petitioner's retirement allowance under the provisions of section 2608 of said Charter [3] beginning October 1, 1960. *308 As the result of the above change, petitioner's retirement allowance was reduced from 75 percent of his salary in the year preceding his retirement to 50 percent of said compensation, in accordance with the provisions of section 2608(c) of the Charter of the City of Oakland. [4] From that date until the time of trial, petitioner has continued to receive a retirement allowance pursuant to the latter provision. At the time he was placed on disability retirement on July 1, 1960, petitioner had paid contributions to the Fire Department Pension Fund in the total amount of $4,646.56. In 1978 petitioner received a retirement allowance from the City of Oakland in the amount of $10,504, and he received a retirement allowance of $11,618 in the year 1979. Petitioner excluded these amounts from his reported income in his joint income tax returns for those years. In periodic statements furnished to him concerning his retirement pay and deductions therefrom, as well as in annual Forms W2P furnished to him, the City of Oakland consistently referred to petitioner's retirement payments as being for disability. Upon audit, respondent determined that the payments *309 received by petitioner in 1978 and 1979 were not excludable from gross income as disability payments, but were fully taxable. In contending for nontaxability, petitioners urge that the change in retirement benefits made by the City of Oakland, effective October 1, 1960 was simply a change in computing the amount of petitioner's payment and had nothing to do with the nature of said payment which remained, as always, a retirement payment on account of disability. Respondent, on the other hand, contends that a change both in the nature and the amount of the payment took place on October 1, 1960 in that, prior to that time, petitioner's payments were based only on disability, and without reference to age or length of service, whereas, subsequent to that time, petitioner's retirement payments were based on age and length of service, thus rendering them ineligible for exclusion under section 104(a)(1). Section 104(a)(1) excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness; * * *." Section 1.104-1(b), Income Tax Regs. further provides in pertinent part: Section 104(a)(1) excludes from gross income amounts *310 which are received by an employee under a workmen's compensation act * * * or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment. * * * However, section 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness. * * * In conformity with the above regulation, we and other courts have consistently held that, in order to be excludable under the provisions of section 104(a)(1), retirement pensions or payments may not be based upon any factor other than disability and, where payments are based upon any other factor, such as age or length of service on the job, the retirement plan in question will not qualify as similar to workmen's compensation acts within the meaning of section 104. Haar v. Commissioner,78 T.C. 864 (1982), affd. *311 709 F.2d 1207 (8th Cir. 1982); Riley v. United States,156 F. Supp. 751 (Ct. Cl. 1957); Carlton v. United States,7 Cl. Ct. 323 (1985); Dauria v. Commissioner,T.C. Memo. 1982-458. The question, then, is essentially factual, viz, upon what basis were the retirement payments in question paid? Compare Frye v. United States,72 F. Supp. 405 (D.D.C. 1947). An examination of the provisions of the Charter of the City of Oakland under which the payments in question in this case were made shows clearly that, after his retirement and until September 1960, petitioner was paid under the disability retirement provisions of that Charter, section 2610(a). It is equally clear from the stipulated facts that, beginning October 1, 1960, petitioner having arrived at the age of 55 years and having 22 years of service, his retirement was shifted from disability retirement payments under section 2610 of the city Code and was changed to reduced payments under the regular retirement program of the city, pursuant to section 2608 of the City Charter. [5] Beginning in October 1960, therefore, petitioner was no longer being paid *312 perely on the basis of this disability, but started to receive new and different payments based upon his age and years of service with the Oakland Fire Department under different provisions of the city Charter. Such payments cannot be considered to have been disability payments, but were directly attributable to the payments provided for regular retirement. As such, they do not qualify for exclusion under section 104(a)(1). In the case of Wiedmaier v. Commissioner,T.C. Memo. 1984-540 (on appeal 6th Cir. Oct. 24, 1984), the taxpayer, a City of Detroit fireman, was injured in the line of duty and retired for disability prior to the time he would have been eligible for regular retirement. Under applicable regulations of the Detroit Police and Firemen's Retirement System, he began receiving disability retirement payments at the rate of two-thirds of his former compensation. Later on, and after the taxpayer became eligible, through years of service, for a regular retirement pension, his benefits were changed and reduced to one-half of his regular active duty compensation. *313 In that case, we held that the taxpayer's new benefits were not a continuation of his former disability retirement, but were regular retirement payments based upon length of service and therefore were not excludable under section 104(a)(1). We think the instant case presents the same set of facts as in Wiedmaier v. Commissioner,supra, and is not distinguishable in any significant respect. The same conclusion is called for in this case, and we therefore hold for respondent. [6]
Decision will be entered for respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Section 2610(a) provides in pertinent part: (a) Any member of the Police or Fire Department who becomes incapacitated for the performance of duty by reason of any injury received in, or illness caused by or arising out of the performance of duty and which disability continues without interruption for one (1) year, may be retired, and, if not qualified for service retirement shall receive a retirement allowance equal to seventy-five (75%) per cent of the compensation attached to the average rank held by such member during the one (1) year immediately preceding such retirement. Such retirement allowance shall be paid until the date upon which said member would have qualified for service retirement had such member rendered service without interruption, and on and after said date said retirement allowance shall be equal to the retirement allowance said member would have received if retired for service on said date, based on the compensation attached to the average rank held during the one (1) year next preceding retirement. * * *↩
3. Section 2608, as applicable here, provides: (a) Any member of the Police or Fire Department who completes at least 25 years of service in the aggregate, regardless of age, or at least 20 years of service in the aggregate and attains the age of 55 years, said service to be computed under section 2609, may retire for service at his option. * * * (c) A member retired after meeting the requirements of paragraphs (a) or (b) next preceding, shall receive a retirement allowance equal to fifty (50) per cent of the compensation attached to the average rank held during the three (3) years immediately preceding such retirement, plus an additional allowance at the rate of one and two-thirds (1-2/3%) per cent of said compensation for each year of service rendered after the effective date of this Article and after qualifying for service retirement, not to exceed ten (10) years. * * *↩
4. See fn. 3, supra.↩
5. See the pertinent portions of the city Charter quoted above herein in footnotes 2 and 3.↩
6. Petitioner's complaint that respondent's position herein has the effect of discriminating unfavorably against disability retirees, as compared to those who retire in normal course based on years of service, has been sufficiently addressed and answered in Ruggere v. Commissioner,78 T.C. 979↩ (1982).